## HALE v. HARRIS.

1. JUDGMENTS—COMPETENCY—CONCLUSIVENESS — INSANE PERSONS —RES JUDICATA—PROBATE COURTS—ESTATES OF INCOMPETENTS.
   A decree of the probate court adjudging a party incompetent is not conclusive on a stranger to the proceedings, but is competent evidence.

2. DEEDS—CANCELLATION OF INSTRUMENTS—UNDUE INFLUENCE—EVIDENCE.
   Where defendant to a bill to set aside her interest in a deed for fraud and undue influence on the ground of the grantor's incompetency had complete domination over the alleged incompetent, who was mentally and physically weak, and where defendant swore that she paid half the consideration for the deed, the incompetent the other half, and the deed was executed to both jointly, but it appeared that the alleged incompetent at the same time drew from his bank an amount sufficient to cover the entire consideration, and that defendant, who was familiar with his affairs, could not account for his expenditure of the remaining half and also failed to produce satisfactory evidence that she had as much money as she claimed to have paid, the conclusion that she procured the insertion of her name in the deed by undue influence is justified.

Appeal from Wayne; Donovan, J. Submitted January 25, 1912. (Docket No. 32.) Decided March 12, 1912.

Bill by Sanford Hale and William Hale against Mary E. Harris to set aside defendant's interest as grantee in a deed conveying real property jointly to defendant and Richard Hale, deceased. From a decree for defendant, complainants appeal. Reversed.

*Bush & Bush (Harvey S. Durand* and *N. Calvin Bigelow,* of counsel), for complainants.

*James H. Pound,* for defendant.

BLAIR, J. Complainants, as heirs at law of Richard Hale, deceased, instituted this suit to set aside the interest of defendant in certain real estate conveyed, on August 16, 1906, by one Maria Murtagh, for an actual consideration of $1,400, to said Richard Hale and said defendant as joint tenants.

The grounds for relief alleged are, briefly, that said Richard Hale paid the entire consideration, and that defendant procured the insertion of her name as a grantee by fraud and undue influence, and because of the mental incompetency of said Richard Hale. Defendant's answer denies the alleged mental incompetency, fraud, and undue influence, and—

"Insists that she paid $700 of said consideration, she taking the money from her shopping bag, and that the said Richard Hale paid but $700, so that each of the grantees were equal owners of said land, and so purposely and knowingly became, and that they purposely made the same a joint tenancy at the joint will and desire of each."

In June, 1900, Richard Hale moved to Detroit from Shiawassee county and married one Caroline Cody as his second wife. At that time he was worth upwards of $2,500. May 27, 1905, he suffered a stroke of paralysis. Caroline Cody Hale, his wife, died in June, 1906, about one year after the stroke, and two days before her death

Mary E. Harris, her sister, the defendant in this case, came to the home of her sick sister and remained there until she and Richard Hale took possession of the property which is the subject of this suit. On the 7th day of June, 1906, a petition for administration was filed, alleging that

"Said Richard Hale, husband of said deceased, is a paralytic and an unsuitable and incompetent person to administer said estate."

Indorsed upon this petition was the following:

"We hereby consent to and join in the foregoing petition. Mary E. Harris" and others

Some time from the 15th to the 25th of June, 1906, defendant arranged with Mr. Eaman, a real estate man, to purchase the property in question, and Mr. Hale paid $25 "to bind the bargain." They took possession about August 29th thereafter. On the 25th day of July, 1906, Sanford Hale filed a petition for the appointment of a guardian of the person and estate of said Richard Hale on the ground of mental incompetency. A citation was served on said Richard on the same day, in the presence of defendant, who fully understood its contents and purport. The hearing upon this petition was adjourned from time to time to December 10th, when defendant and said Richard were sworn, among other witnesses, and thereupon Judge Durfee decreed that said Richard was mentally incompetent, and appointed a guardian as prayed.

On the hearing in this cause in the circuit court, there was the usual conflict of testimony upon the question of Mr. Hale's mental competency. In his opinion for a decree, the circuit judge found:

"*First.* That Mr. Hale was fully competent to buy and deed and deal in such property; in fact, the purchase was in June, before any application for or guardianship papers had been mentioned.

"*Second.* That such a man, who had provided liberally for his well-to-do sons, and needed a home and care, did perfectly right to make the joint purchase, and insure his care and comfort thereby, at a time when money is a small compensation for attention.

"*Third.* The Supreme Court cases cited are neither one in direct point, and relate to immoral conduct in no way relating to this home purchase.

"*Fourth.* The care, nursing, and companionship would be left unrewarded, if the deed were set aside. That would, under the proofs, be an unreasonable act."

In accordance with this opinion, a decree was entered dismissing the bill of complaint, and complainants have appealed therefrom to this court.

Counsel for complainants contend that the decree of the probate court was a final and conclusive adjudication that Mr. Hale was mentally incompetent, and that such decree relates back to the time of filing the petition. Defendant was a stranger to those proceedings and not concluded by them. As to strangers, the probate decree would only be evidence of the mental status of the alleged incompetent person in transactions had after its entry. The probate proceedings were only competent as part of the history of Mr. Hale, and as bearing upon the conduct of defendant towards him; she having had full knowledge of the proceedings from the outset.

We should hesitate to find upon this record that complainants had established the fact that Mr. Hale was mentally incompetent to agree with Mrs. Harris for the purchase of the property in question in joint tenancy. We are satisfied, however, that he was quite weak mentally as well as physically, easily susceptible to undue influence, if defendant chose to exercise it over him, and that he was under her influence to such an extent that he was afraid to express himself in her presence, and that her mind and will completely dominated his. With reference to the negotiations leading up to the purchase and the purchase itself, the weight of the testimony is that she was the moving party, and spoke for him as well as herself, and her testimony as to this transaction furnishes a test of her good faith.

It is not pretended that Mr. Hale intended to make defendant a present of a half interest in the real estate as

joint tenant, or that he paid the entire purchase price in consideration of her taking care of him and making a home for him.  On the contrary, she claimed in her answer, and testified upon the hearing, that she actually paid one-half of the purchase price herself.  Mr. Hale testified in probate court, in presence of defendant, that he bought the house and lot and paid $1,500 for it.  It appears beyond dispute that on the 16th day of August, 1906, the day the deed was executed and the purchase price paid, Mr. Hale drew out of the State Savings Bank $800 and out of the Detroit Savings Bank $700.  If, as Mrs. Harris testified, Mr. Hale was entirely competent to transact this business, it is somewhat strange that he should have testified that he paid $1,500 for the house and lot and have said nothing about her paying $700.  It is also a strange coincidence that the books of the two banks should show that he drew out the precise sum mentioned. Whether the extra $100 over the consideration for the deed was for commissions, services, or expenses in connection with the transaction which he had agreed to pay, does not appear conclusively; but the record will support such an inference.

Defendant testified that she got the money to pay her half of the purchase price from her daughter and her husband, who were indebted to her:

"*Q.* When did you first loan her any money?

"*A.* I loaned her money when they bought their fast horse.

"*Q.* When was that?

"*A.* About four years ago; I guess over four years ago.   *   *   *

"*Q.* How did you know he had the money to buy this property?

"*A.* I suppose he knew he had the money himself.

"*Q.* And he bought it, did he not?

"*A.* I told him I could get the money I loaned Mrs. Morris; that I could get the money I loaned Mr. Morris' folks to pay for my half.

"*Q.* What did he say?

"*A.* He said he would pay for his half.

"*Q.* Did he say where he would get it?

"*A.* He said he would go to the bank and get it. \* \* \*

"*Q.* After that day that you bought the property, did you know of his spending any money after that of any great size?

"*A.* No, sir; I do not know what he did with his money; he went to different places around.

"*Q.* You never heard of him buying anything that cost an item of $700 or $800?

"*A.* No, sir; he said different persons wanted to hire money before she died."

Defendant's daughter, Mrs. Morris, testified:

"*Q.* Did your mother at that time have some means of her own?

"*A.* Yes, sir.

"*Q.* And what besides; had you and your husband any money of hers?

"*A.* Yes, sir."

The son-in-law, Morris, testified:

"I also know that I had borrowed $250 of Mrs. Harris on one occasion and another time $200 and another time $150 or $200. I told my wife to give it to her when this property was bought. \* \* \* Mrs. Harris sold a couple of farms, and I think this money I had was a part of what she received in pay, and she worked. I owe Mrs. Harris no money now. I gave her the money just before she moved there on Harrison avenue."

This vague and conflicting testimony, unsupported by any written evidence whatever, and not in accordance with the usual practice in such transactions, in connection with the fact that Richard Hale drew the entire amount necessary out of the bank on the very day of the payment, that defendant, who, in our opinion, knew all about Richard Hale's transactions, and what he did with his money, was unable to account for his use of the extra $800, satisfies us that her testimony that she paid $700 of the purchase price should not be accepted as true. Defendant's fraudulent conduct in attempting to sustain this transaction as a joint and equal purchase justifies the in-

ference that she was not acting in good faith, and procured the insertion of her name in the deed by fraud and undue influence.

The fourth and most important reason assigned by the court for the decree is based upon a mistake of fact. Defendant was liberally paid for everything she did for Richard Hale.

The decree is reversed, and a decree may be entered in accordance with this opinion.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.